Filed 4/18/13  P. v. Martin CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D061667/D060453 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD219320) |
| TODD DAVID MARTIN, | |
| Defendant and Appellant. | |

CONSOLIDATED APPEALS from judgments of the Superior Court of San Diego County, Jeffrey F. Fraser, Esteban Hernandez, and George W. Clarke, Judges.  Affirmed.

INTRODUCTION

In these two consolidated appeals—D060453 (*Martin I*) and D061667 (*Martin II*)—Todd David Martin claims that (1) certain terms of his probation that the court found he had violated were improperly imposed because they were either unreasonable or unconstitutionally vague and/or overbroad; (2) even if they were properly imposed, the evidence presented at the two probation revocation hearings was insufficient to support the court's findings he had violated terms of his probation;  and (3) after it revoked

Martin's probation the second time, the court abused its discretion when it lifted the stay on the execution of the three-year prison sentence the court imposed after it revoked probation the first time because (he claims) any probation condition violations he committed were "de minimis and not wilful [*sic*]." We affirm the judgments.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Martin's Underlying Conviction and Initial Terms of Probation*

1. *Facts of Martin's offense*[1]

On March 5, 2009, police officers went to Martin's home for the purpose of investigating his possible participation in a series of rapes and robberies in the Carmel Valley area of San Diego. Martin was a registered sex offender and roughly fit a description given to police.

During the encounter, police patted down Martin's outer garments and felt a baggie consistent with the possession of marijuana and what appeared to be a pill bottle. Police obtained Martin's permission to search his car.

The search of Martin's car revealed a piece of burned "tinfoil," which appeared to be consistent with foil that had been used to liquefy methamphetamine. Martin was arrested following the search of his car.

---

[1] The following brief summary of the facts underlying Martin's conviction is taken primarily from this court's nonpublished opinion in *People v. Martin* (Jan. 18, 2012, D059078). In that case, counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, raising possible but not arguable issues and asking this court to review the record for error. We affirmed the judgment.

Martin was searched following his arrest. The search revealed 0.08 grams of methamphetamine, which was described as a usable quantity.

2. *Martin's conviction and initial terms of his probation*

In early May 2010, a jury convicted Martin of possession of methamphetamine. (Health & Saf. Code, § 11377, subd. (a).) Following a bench trial, the court found true an allegation that Martin had suffered a prison prior (Pen. Code, §§ 667.5, subd. (b) & 668), but found not true an allegation he had suffered two prior strikes (Pen. Code, §§ 667, subds. (b)-(i), 1170.12 & 668).

At sentencing in January 2011, the trial court suspended imposition of sentence and placed Martin on three years of formal probation, subject to numerous terms and conditions. Pertinent here are the following three original terms of Martin's probation:

> (1) Term 6b: "Follow such course of conduct as the P.O. [(probation officer)] prescribes."
>
> (2) Term 6h: "Report to the P.O. as directed."
>
> (3) Term 7c: "Provide written authorization for the P.O. to receive progress and/or compliance reports from any medical/mental health care provider, or other treatment provider rendering treatment/services per court order under the terms of this grant of probation."

In late March 2011, Martin's probation officer, Gilbert Hernandez, reviewed the probation conditions with Martin. Under term 6b, Officer Hernandez orally directed Martin:

(1) Not to use force, threats, or violence against anybody.

(2) Not to stay anywhere other than at the Destiny House sober living facility without Officer Hernandez's permission.

(3) To abide by a 9:00 p.m. curfew.

B. *First Probation Revocation Proceeding, Reinstatement of Probation, Imposition and Stay of Three-Year Prison Term and Appeal* (*Martin I*)

In mid-April 2011, Martin was arrested for violating terms 6b and 6h of his probation.

1. *Probation officer's reports and allegations that Martin violated probation terms 6b, 6h, and 7c*

A few days later, on April 20, Officer Hernandez filed a report of defendant's rearrest in which he alleged Martin violated term 6b by violating Officer Hernandez's March 23 oral directives that Martin (1) not threaten anyone in any manner, (2) reside only at the Destiny House sober living facility unless given permission to reside elsewhere, and (3) abide by a 9:00 p.m. curfew. Specifically, Officer Hernandez alleged that Martin repeatedly threatened his roommates and the owner and manager of the Destiny House facility where he had been living, he physically attacked the manager of that facility, and he often went missing for one or more days. In his report, Officer Hernandez also alleged Martin violated term 6h when, after Officer Hernandez left several messages for Martin at the sober living facility, he failed to report to Officer Hernandez as directed.

4

Thereafter, on May 13, 2011, Officer Hernandez filed a supplemental report alleging Martin also had violated term 7c by refusing to provide written authorization allowing him to receive progress and compliance reports from Martin's health care providers. Specifically, Officer Hernandez alleged that during his interview for the supplemental report, Martin told him he had gone to a county mental health facility because he felt suicidal. When Officer Hernandez asked Martin to sign a release allowing him to receive the records of Martin's treatment, Martin refused to sign the release.

2. *First probation revocation hearing*

*Officer Hernandez's testimony*

At the August 3, 2011 hearing on Martin's alleged probation violations, Officer Hernandez testified that on March 23 of that year he reviewed with Martin the conditions of his probation. Officer Hernandez indicated that during the meeting he orally imposed a 9:00 p.m. curfew on Martin and instructed him that he was not to reside anywhere other than at the Destiny House sober living facility without Officer Hernandez's permission and that he was not to threaten, intimidate, or "put his hands on" anyone in any manner. Officer Hernandez testified that during the March 23 meeting, Martin became upset and extremely angry and claimed he had been wrongly accused and convicted.

With regard to the directive that Martin not use force, threats, or violence against anyone, Officer Hernandez testified that Martin's roommate at Destiny House told the officer that he had had a physical altercation with Martin in April when Martin was yelling loudly and the roommate told him to be quiet. The roommate told Officer

5

Hernandez that Martin grabbed him and, when Martin then grabbed what appeared to be a knife or fork, the roommate pulled away from Martin and ran. He also told Officer Hernandez that Martin had threatened other people, including Stephen Hansen, the owner and manager of the sober living facility. Officer Hernandez stated he also spoke with Hansen, who indicated he was aware of the incident between Martin and his roommate and that Hansen himself had also been verbally threatened by Martin.

With regard to the curfew and residence directives, Officer Hernandez testified that Hansen told him Martin was not abiding by house rules and had sometimes been away from Destiny House for days. According to Officer Hernandez, Martin admitted to him that he had not abided by the 9:00 p.m. curfew and that he had not stayed at Destiny House for periods of time.

With respect to the requirement that Martin meet with Officer Hernandez as directed, Officer Hernandez testified that he called and left several messages at Destiny House between March 23 and April 14, 2011, asking Martin to see Officer Hernandez at the probation office. Martin admitted to Officer Hernandez that he was getting Officer Hernandez's messages from Hansen.

Officer Hernandez also testified that on May 13, 2011, when he interviewed Martin for the supplemental probation officer's report, Martin refused to authorize in writing the release of his medical information from the county mental health facility, and thus Officer Hernandez was unable to find out whether that facility had tested Martin for drugs.

6

During cross-examination, Officer Hernandez testified that nothing in the probation order itself required a curfew or required that Martin reside only at Destiny House. Officer Hernandez stated that although Martin had reported for drug testing twice in April 2011, Martin did not meet with Officer Hernandez, which was a separate requirement of probation.[2] Officer Hernandez also testified he needed to see Martin's county mental health records to determine whether Martin was taking psychotropic medications as prescribed under term 7a of his probation.[3] According to Officer Hernandez, Martin denied that he threatened or put his hands on his roommate, Fannin.

On redirect examination, Officer Hernandez testified again that Martin admitted not staying at Destiny House for days at a time. Officer Hernandez also stated that term 6i of Martin's probation required him to report any change of address.[4]

*Roommate's testimony*

Martin's roommate testified that he lived with Martin for about four months at Destiny House and had considered Martin a friend. He testified that on April 1, 2011, Martin, upset because his roommate had asked him to quiet down, the roommate against the wall, "faked a swing" at him, and grabbed something off the cutting board in the

---

[2] See term 6h, discussed, *ante*, which required Martin to "[r]eport to the P[robation] O[fficer] as directed . . . ."

[3] Term 7a of Martin's probation required that he "[t]ake psychotropic medications if prescribed/ordered by doctor."

[4] Term 6i of Martin's probation required him to "[r]eport any change of address . . . to the P.O. . . . within 72 hours."

kitchen. The roommate acknowledged that in a statement he wrote about the incident, he said he was sure Martin had been under the influence of methamphetamine.

a. *Findings, order, and sentence*

At the conclusion of the evidentiary hearing on the probation violation allegations, the court[5] found Martin had willfully violated terms 6b, 6h, and 7c of his probation, noting there were "several allegations, one involving violence, the curfew, . . . his absence from Destiny House, called the placement [*sic*], failure to report and call back the [probation officer] and kind of a three-week issue." The court formally revoked Martin's probation.

Thereafter, the court reinstated three years of probation subject to all of the original terms and conditions, but with additional conditions, including the following five requiring that Martin:

> b. Use "[e]lectronic GPS 'if' directed by P.O."
>
> c. "Not use force, threats, or violence on another."
>
> d. "Obtain P.O. approval as to residence."
>
> e. "Undergo periodic polygraph evaluation 'if' directed by the P.O. with test results released to probation."
>
> g. "Not possess pornographic material of any kind or be in places where pornography is sold or viewed."

Defense counsel objected to the conditions allowing GPS monitoring and polygraph examinations and prohibiting possession of pornographic materials.

---

5     The Honorable Jeffrey F. Fraser.

The court then imposed a three-year prison term (consisting of the middle term of two years for Martin's count 1 conviction, plus one additional year for his prison prior); but stayed execution of that sentence, stating, "[T]hat's imposed and stayed, with the idea that *on the first violation the stay will be lifted*."  (Italics added.)

b. *Martin's first appeal and contentions* (*Martin I*)

Martin appeals, contending (1) the evidence was insufficient to support the court's findings that he violated terms 6b, 6h, and 7c of his probation; (2) alternatively, the court erred in finding he violated the oral directives Officer Hernandez imposed under term 6b because those directives could not be imposed in the first instance as they were unconstitutionally vague and overbroad; and (3) the five additional probation conditions added after the court reinstated probation were unreasonable and unconstitutionally vague and overbroad.

C. *Second Probation Revocation Proceeding, Order Lifting Stay of Execution of Prison Term, and Second Appeal* (*Martin II*)

On October 31, 2011, Martin was arrested for violating the terms of his reinstated probation.

1. *Probation officer's report and allegations that Martin violated probation terms 6f, 10n, and 11b*

In November 2011, Martin's probation officer, Lester Brown, filed a report of rearrest and a supplemental report, alleging Martin failed to comply with three terms of his probation:  (1) "Failed to report (call the random drug testing line) as directed"; (2) "Failed not to possess any pornographic material"; and (3) "Failed to comply with [battery] charging requirements per GPS requirements."

9

Specifically, Brown alleged that Martin violated term 6f on October 10, 2011, by failing to report to testing, despite being told to call the testing line every day, including holidays and weekends. Brown reported that Martin told him he did not report on the day in question because it was a holiday and he believed the probation office was closed.

Brown also alleged that Martin violated term 10n prohibiting possession of pornographic material on October 30 and 31, 2011, when he was found to be in possession of three pornographic DVD's.

Regarding term 11b, Brown alleged Martin allowed the battery on his GPS device to die on eight specified dates between August 15 and October 30, 2011, "making tracking [of] his whereabouts impossible."

Noting that Martin was a registered sex offender who had scored a "7" on the Static-99 indicating a "high risk to recidivate," Brown reported "[i]t is clear that [Martin] is not willing to abide by the conditions of probation" and recommended that the court formally revoke probation and impose the three-year prison term the court had previously imposed but stayed.

2. *Second probation revocation hearing*

*Officer Brown's testimony*

At the January 2012 evidentiary hearing on the new probation violation allegations, Officer Brown testified that on October 30, 2011, he went to check on Martin at his one-bedroom apartment at the Reiss Hotel during a routine field visit. Martin was not in his room and Brown was let in by management. While conducting a search, Brown noticed pornography playing on the television set. Brown found a DVD

10

containing pornography in the DVD player and another one in a drawer below the television set, both of which were confiscated.

Brown testified that Martin's room was searched again the next day by different officers. This time Martin was present, and pornography was playing on the television set. Another pornography DVD was confiscated from the DVD player. When Brown later interviewed Martin, he refused to give a reply when asked about the pornography.

With regard to the GPS monitoring, Brown testified that as a condition of probation Martin was hooked up to a device which was battery-operated and monitored via satellite. The battery life of the GPS device is 24 hours and probationers are directed to charge the device for an hour and a half in the morning and evening. Brown indicated he is immediately alerted through his Blackberry phone when a probationer's battery dies. Brown testified to the eight specific occasions when Martin's battery was not charged. Martin told Brown he had been charging the battery, but would occasionally forget or fall asleep while charging the battery and would wake up believing it was charged only to realize it was not.

According to Officer Brown, Martin was also required to call a random drug testing line seven days a week and report for drug testing the following morning if his assigned "car or color" came up. Martin failed to report for testing on October 10, 2011. Martin told Brown he did not believe he needed to call in because it was a federal holiday and he thought the office would be closed.

*Martin's defense testimony*

Martin testified he failed to show up for testing on October 10, 2011, because he believed probation would be closed after he visited the "SSI building," which was closed that day. Martin denied he was ever told probation would be open every day including holidays. He stated he reported and tested the next day. Martin stated he never failed a urinalysis test while on probation.

With regard to the GPS device, Martin stated he charged the battery every day, but indicated he may not have charged it for the entire hour and a half. He stated the battery may not have charged long enough because he would sometimes place the charger on his leg but it would fall off while he slept. Martin testified that on another occasion, he slept for 20 hours and the battery was dead when he awoke.

When asked by his counsel whether he possessed the pornography DVD's, Martin first stated he was watching a football game. Martin then told his attorney, "[B]esides that, that's hearsay and inadmissible hearsay." Then Martin denied having pornographic DVD's in his room or in his possession.

a. *Findings, order, and sentence*

The court[6] found Martin violated the terms and conditions of probation by "failing to report (call the random drug testing line) as directed," by "fail[ing] to comply by keeping keep his GPS [device] charged," and by possessing pornographic material. The court formally revoked Martin's probation.

---

6    The Honorable Esteban Hernandez.

12

Thereafter, the court[7] lifted the stay of execution of Martin's three-year prison sentence.

b. *Martin's second appeal and contentions* (*Martin II*)

In his second appeal, Martin contends (1) the evidence was insufficient to support the court's findings that he violated his probation by failing to report for drug testing and by failing to keep his GPS battery charged; and (2) the court erred in finding he violated his probation by possessing pornographic material where this condition could not be imposed in the first instance because this added probation condition is unconstitutionally vague and is not reasonably related to either the underlying drug possession offense or future criminality; and (3) the court abused its discretion in revoking probation and imposing a prison sentence because any alleged probation violation was de minimis and not willful.

By order dated July 9, 2012, this court ordered both appeals consolidated under case No. D061667.

DISCUSSION

I. *MARTIN I*

A. *Sufficiency of the Evidence* (*Three Oral Directives Under Term 6b and Terms 6h & 7c of Martin's Original Probation*)

In *Martin I*, Martin first contends the evidence is insufficient to support the court's findings that he violated three oral directives given by Officer Hernandez under term 6b, as well as terms 6h and 7c, of Martin's original probation. We reject this contention.

---

7      The Honorable George W. Clarke.

13

1. *Standards of proof and appellate review*

Penal Code section 1203.2, subdivision (a) authorizes a trial court to revoke the supervision of a person released on probation "if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation . . . officer or otherwise that the person has violated any of the conditions of his or her supervision . . . ." A trial court is accorded "very broad discretion in determining whether a probationer has violated probation." (*People v. Rodriguez* (1990) 51 Cal.3d 437, 443.)

A probation violation need only be proven by a preponderance of the evidence. (*People v. Rodriguez, supra,* 51 Cal.3d at p. 447; *People v. Jackson* (2005) 134 Cal.App.4th 929, 935.)

When the sufficiency of the evidence supporting a trial court's probation revocation decision is challenged on appeal, we apply the substantial evidence standard of review, under which "great deference is accorded the trial court's decision, bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court.'" (*People v. Urke* (2011) 197 Cal.App.4th 766, 773.) We view the evidence in the light most favorable to the judgment, and we do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (See *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Jones* (1990) 51 Cal.3d 294, 314.) "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Only in a very extreme case should a reviewing court interfere with a trial court's discretion to revoke probation. (*People v. Rodriguez, supra*, 51 Cal.3d at p. 443.)

2. *Analysis*

a. *Officer Hernandez's oral directives under term 6b*

We first conclude that substantial evidence supports the court's finding that Martin willfully violated Officer Hernandez's oral directives under term 6b that Martin (1) not use force, threats, or violence against anybody; (2) not stay anywhere other than at the Destiny House sober living facility without Officer Hernandez's permission; and (3) abide by a 9:00 p.m. curfew. Specifically, Officer Hernandez testified he reviewed these directives with Martin. Martin's roommate testified that when he asked Martin to quiet down, Martin threw him against the wall, faked a swing at him, and then grabbed something off of the cutting board in the kitchen. Officer Hernandez testified that Martin admitted to him that he had not abided by the 9:00 p.m. curfew and that he had not stayed at the Destiny House sober living facility for periods of time. The evidence shows that Hansen, the owner and manager of that facility, reported to Officer Hernandez that Martin had sometimes been away from Destiny House for days at a time. Officer Hernandez also testified that Martin admitted he did not stay at Destiny House for days at a time. The foregoing substantial evidence is sufficient to support the court's findings as to term 6b.

b. *Term 6h*

We next conclude substantial evidence supports the court's finding that Martin willfully violated term 6h, which required that he "[r]eport to the P.O. as directed."

15

Officer Hernandez testified that he called and left several messages for Martin at Destiny House between March 23 and April 14, 2011, asking Martin to see Officer Hernandez at the probation office, but Martin failed to report as directed and Officer Hernandez "[c]ouldn't find him, didn't know where he was." Officer Hernandez also testified that Martin admitted to him that he was getting Officer Hernandez's messages from Hansen. This substantial evidence is sufficient to support the court's finding as to term 6h.

c. *Term 7c*

Substantial evidence also supports the court's finding that Martin willfully violated term 7c, which required that he "[p]rovide written authorization for the P.O. to receive progress and/or compliance reports from any medical/mental health care provider, or other treatment provider rendering treatment/services per court order under the terms of this grant of probation." Officer Hernandez testified he needed to see Martin's mental health records to determine whether Martin was taking psychotropic medications as prescribed under term 7a of his probation.[8] Officer Hernandez also testified that on May 13, 2011, when he interviewed Martin for the supplemental probation officer's report, Martin refused to authorize in writing the release of his medical information, and thus Officer Hernandez was unable to find out whether that facility had tested Martin for drugs. This substantial evidence is sufficient to support the court's finding as to term 7c.

---

[8]     See footnote 3, *ante*.

B. *Constitutionality of Probation Officer Hernandez's Oral Directives Under Term 6b Regarding Threats and Place of Residence*

Martin alternatively claims the court erred in finding he violated Officer Hernandez's oral directives (which Martin also refers to as oral conditions) concerning threats and Martin's place of residence because those directives should not have been imposed in the first instance as they were unconstitutionally vague and overbroad. These claims are unavailing.

1. *Applicable legal principles*

Although challenges to the constitutionality of probation conditions on the grounds of vagueness and overbreadth are frequently made together, the concepts are distinct. "[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.'" (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*); see U.S. Const, Amends. 5, 14; Cal. Const., art. I, § 7.) A probation condition is unconstitutionally vague if it is not " 'sufficiently precise for the probationer to know what is required of him [or her], and for the court to determine whether the condition has been violated.'" (*Sheena K.*, at p. 890.) "In deciding the adequacy of any notice afforded those bound by a legal restriction, we are guided by the principles that 'abstract legal commands must be applied in a specific *context*,' and that, although not admitting of 'mathematical certainty,' the language used must have '"*reasonable* specificity."'" (*Ibid.*, quoting *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1116-1117.)

In contrast, a probation condition is unconstitutionally overbroad if it imposes limitations on the probationer's constitutional rights, and it is not closely or narrowly

17

tailored and reasonably related to the compelling state interest in reformation and rehabilitation. (*Sheena K.*, *supra,* 40 Cal.4th at p. 890; *In re Victor L* (2010) 182 Cal.App.4th 902, 910.) "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

In an appropriate case, a probation condition that is not " 'sufficiently narrowly drawn' " may be modified and affirmed as modified. (*People v. Lopez* (1998) 66 Cal.App.4th 615, 629; see also *In re E.O.*, *supra*, 188 Cal.App.4th at p. 1158.)

2. *Analysis*

a. *Threats*

Martin contends that Officer Hernandez's oral directive under term 6b that Martin not use force, threats, or violence against anybody—which became a formal condition of probation designated term c after the court's first revocation and reinstatement of Martin's probation[9]—was unconstitutionally vague because it "was not sufficiently precise for [him] to know what was required of him." We reject this contention.

As already discussed, the testimony of Martin's former roommate shows that when he asked Martin to quiet down, Martin threw him against the wall, faked a swing at him,

_____

[9]     The court's order after hearing dated August 8, 2011, shows that after it revoked Martin's probation, the court reinstated probation but formally modified the terms and conditions of probation by (among other things) adding term c, which provided that Martin "[n]ot use force, threats, or violence on another."

18

and then grabbed something off the cutting board in the kitchen. The record of the first probation revocation hearing is devoid of any evidence that might suggest Martin was acting in self-defense, and on appeal he does not claim he was acting in self-defense. We conclude Officer Hernandez's oral directive was "sufficiently precise" to put Martin on clear notice that pushing his roommate against the wall, faking a swing of his fist at him, and then grabbing something off a kitchen cutting board would be a violation of the oral directive that he not use force, threats, or violence against anybody.

Martin also contends this same oral directive was unconstitutionally overbroad, and thus should "not [have been] imposed in the first instance" because "it failed to provide for Martin's right to exercise his freedom of expression protected by the First Amendment to the federal Constitution as well as his statutory and constitutional right to engage in self-defense." He asserts this condition of probation should be stricken because it "does not pass constitutional muster" or, "[a]lternatively, [it] should be modified to allow for the use of lawful force, threats or violence."

The Attorney General responds that this condition of probation was not unconstitutionally overbroad "since there is no reasonable likelihood a probation officer would recommend that [Martin] be found in violation of probation because he had used 'angry words' in an exercise of his right to free speech or [had acted] in some type of self-defense." The Attorney General, however, has no objection to a modification of this condition—in the event this court concludes it is unconstitutionally overbroad and we reverse Martin's prison commitment and reinstate probation—to provide that Martin "not

19

use force, threats, or violence on another person *except in lawful self-defense or in the exercise of a constitutional right*." (Italics added.)

We agree this condition of probation should have provided that Martin not use force, threats, or violence against another person "except in lawful self-defense or in the exercise of a constitutional right," as the Attorney General acknowledges, in order to protect Martin's right to engage in lawful self-defense and his right to lawfully express what he refers to as "angry words" to someone. However, we reject Martin's claim that the failure of the challenged condition to so provide requires that his prison commitment be reversed and his probation be reinstated. This claim is based in part on Martin's assertion that "the evidence adduced at the [first probation revocation] hearing indicated [he] shared 'angry words'" with his roommate and others, which he maintains "indicated [he] did not intend his conduct to be truly threatening or intimidating." However, the evidentiary record of that proceeding shows that Martin was *not* acting in lawful self-defense or merely "shar[ing] 'angry words'" with his roommate. Accordingly, we conclude the court did not err in finding that Martin willfully violated term 6b of his probation by engaging in such physical and threatening conduct. As we shall affirm (for reasons we shall explain) the court's decision to revoke Martin's probation a second time and lift the stay of execution of the prison sentence it imposed, we also conclude the issue of whether the probation condition at issue here should be modified is moot because we reject Martin's claim that his probation must be reinstated again.

20

### 3. *Place of residence*

Relying on *People v. Bauer* (1989) 211 Cal.App.3d 937 (*Bauer*), Martin also contends that Officer Hernandez's oral directive that Martin not stay anywhere other than at the Destiny House sober living facility without Officer Hernandez's permission—a directive that became a formal condition of probation designated term d after the court's first revocation and reinstatement of Martin's probation[10]—was unconstitutionally overbroad because "the probation officer's oral directive forbade Martin from living anywhere except Destiny House" and "impermissibly infringed on his constitutional right of association and his right to travel." Martin further contends this condition of probation should not have been imposed in the first instance, and thus his prison commitment should be reversed and his probation should be reinstated. We reject these contentions.

This condition of probation did not, as Martin appears to claim, categorically forbid him from living anywhere except the Destiny House. It allowed Martin to live elsewhere with prior approval of his probation officer in the interest of furthering the state interest in Martin's reformation and rehabilitation.

Martin's reliance on *Bauer* is unavailing because that case is factually distinguishable. In *Bauer*, the trial court required, as a condition of probation the probation department did not propose, that the defendant obtain his probation officer's approval of his residence. (*Bauer*, *supra*, 211 Cal.App.3d at pp. 940, 943.) The

---

10     The court's order after hearing dated August 8, 2011, shows that after it revoked Martin's probation, the court reinstated probation but formally modified the terms and conditions of probation by (among other things) adding term d, which provided that Martin "[o]btain P.O. approval as to residence."

probation report showed the defendant was living at his parents' home where he had always lived, he had had close family relations all of his life, he had no plans to leave his parents' home, and his parents were getting older and would benefit from his helping them with work around the house. (*Id.* at p. 944.) The Court of Appeal ordered the residency approval condition stricken, concluding it was unconstitutionally overbroad because it impinged on the defendant's constitutional right to travel and freedom of association without being "narrowly tailored to interfere as little as possible with these important rights," and it gave the probation officer "the power to banish him" from living with or near his parents. (*Ibid.*)

Unlike the residency approval condition in *Bauer*, the residency approval condition at issue here does not give the probation officer a similar unconstitutional power of banishment from a living situation that, like the supportive family situation at issue in *Bauer*, would promote reformation and rehabilitation. On the facts of this case, we conclude the residency approval condition is not unconstitutionally overbroad.

C. *Constitutionality and Reasonableness of the Additional Probation Conditions*

Martin also contends the revocation of his probation must be reversed because all five additional probation conditions that the court added after it reinstated his probation following the first revocation of probation are unreasonable and unconstitutionally vague and overbroad. We reject this contention.

1. *Applicable legal principles*[11]

Under Penal Code section 1203.1, a court granting probation may impose "reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, . . . and generally and specifically for the *reformation and rehabilitation* of the probationer . . . ." (Pen. Code, § 1203.1, subd. (j), italics added.)

A trial court's discretion in imposing conditions of probation, "although broad, nevertheless is not without limits:  a condition of probation must serve a purpose specified in the statute." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.)  In addition, the California Supreme Court has "interpreted Penal Code section 1203.1 to require that probation conditions which regulate conduct 'not itself criminal' be 'reasonably related to the crime of which the defendant was convicted or to future criminality.' " (*Ibid*.)

"Generally, '[a] condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, *and* (3) requires or forbids conduct which is not reasonably related to future criminality." ' " (*People v. Olguin* (2008) 45 Cal.4th 375, 379 (*Olguin*), italics added, quoting *People v. Lent* (1975) 15 Cal.3d 481, 486.)  "This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*Olguin*, at p. 379.)  Thus, "even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is

---

[11]    We have already discussed, *ante*, the legal principles governing challenges to the constitutionality of probation conditions on the grounds of vagueness and overbreadth.

23

not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality."  (*Id.* at p. 380.)

"We review conditions of probation for abuse of discretion."  (*Olguin, supra,* 45 Cal.4th at p. 379.)  A sentencing court abuses its discretion "when its determination is arbitrary or capricious or '"exceeds the bounds of reason, all of the circumstances being considered."'"  (*People v. Carbajal, supra,* 10 Cal.4th at p. 1121.)

2.  *Analysis*

*Term b* (*GPS*)

Martin contends that term b, which required him to use "[e]lectronic GPS 'if' directed by P.O.," was unreasonable, it impermissibly infringed on his constitutional right to freedom of association and his right to travel, and it was unconstitutionally overbroad as it "was not narrowly tailored to the individual probationer."  We reject this contention.  As the court noted, it imposed the GPS requirement on Martin in light of his criminal record to "help the probation officer keep track of him" and let Martin "know that he has to be where he says he's going to be."  This condition of probation was necessary to allow the probation officer to monitor Martin's compliance with other conditions of his probation, such as the 9:00 p.m. curfew.  This condition was reasonable, narrowly tailored, and not unconstitutionally overbroad.

*Term c* (*threats*)

Martin next contends that term c, which required him to "[n]ot use force, threats, or violence on another," was unconstitutionally vague and overbroad.  We have already

24

addressed Martin's challenge to this condition of his probation, which is virtually identical to one of Officer Hernandez's oral directives under term 6b.

*Term d* (*residence approval*)

Relying again on *Bauer*, *supra*, 211 Cal.App.3d 937, which we have concluded is factually distinguishable, Martin contends that term d, which required him to "[o]btain P.O. approval as to residence," is unconstitutionally overbroad. We have already discussed and rejected Martin's challenge to this condition of his probation.

*Term e* (*polygraph evaluation*)

Martin next contends that term e, which required him to "[u]ndergo periodic polygraph evaluation 'if' directed by the P.O. with test results released to probation," was unreasonable and unconstitutionally overbroad. We reject this contention.

In imposing this condition, the court stated, "[W]ith the polygraph, just knowing the [probation officer] can polygraph him if he wants, my hope is that it helps him [stay] on the straight-and-narrow." In light of Martin's criminal record and his demonstrated unwillingness to abide by the conditions of his probation, this condition, like the GPS monitoring condition, could assist the probation officer in monitoring Martin's compliance with the other conditions of his probation. (See *People v. Miller* (1989) 203 Cal.App.3d 1311, 1315, fn. 1 ["[C]onvicted criminals conditionally released to society, such as probationers, . . . may be subjected to polygraph testing to help ensure obedience to valid probation conditions."].) We conclude the court did not act in an arbitrary and capricious manner in imposing this condition of probation because it is reasonably related

to Martin's future criminality. (See *Olguin*, *supra*, 45 Cal.4th at p. 380.) This condition was reasonable and not unconstitutionally overbroad.

*Term g* (*pornography*)

Last, Martin contends that term g, which required that he "[n]ot possess pornographic material of any kind or be in places where pornography is sold or viewed," was unreasonable and unconstitutionally vague. This contention is unavailing. As Martin acknowledges, he suffered a prior conviction for committing sexual battery. In light of Martin's criminal history, a condition of probation requiring him to refrain from possessing sexually stimulating pornographic material, such as the material twice found in his apartment, is reasonably related to future criminality. Regarding the second part of this term of probation, which required that he "[not] be in places where pornography is sold or viewed," the Attorney General has no objection to a modification of this condition that would include a knowledge requirement—providing that Martin "[n]ot possess pornographic material of any kind or be in places where *defendant knows* pornography is sold or viewed"—in the event this court concludes the term was unconstitutionally vague and we reverse Martin's prison commitment and reinstate probation. However, in light of the court's properly supported findings that Martin willfully violated other lawful terms of probation, we reject his claim that the failure of term g to include a knowledge requirement requires that his prison commitment be reversed and his probation be reinstated. As we shall affirm the court's decisions to revoke Martin's probation and lift the stay of execution of the imposed prison sentence, we conclude the issue of whether term g should be modified is moot.

## II. *MARTIN II*

A. *Sufficiency of the Evidence* (*Failures To Report for Drug Testing and Keep GPS Battery Charged*)

In *Martin II*, Martin first contends the evidence was insufficient to support the court's findings that he willfully violated the terms of his probation by failing to report for drug testing and failing to keep his GPS battery charged. We reject these contentions.

1. *Background*

Following the presentation of evidence at the second probation revocation hearing, the court revoked Martin's probation, finding (among other things) that Martin violated term 6f of his probation by "failing to report (call the random drug testing line) as directed," and also violated term 11b by "fail[ing] to comply by keeping keep his GPS [device] charged." The court thereafter lifted the stay of execution of Martin's three-year prison sentence.

2. *Analysis*

a. *Failure to report for drug testing*

In support of his contention that the evidence is insufficient to sustain the court's finding that he willfully violated term 6f by failing to call the random drug test line and report for drug testing on October 10, 2011, as alleged in the probation officer's re-arrest and supplemental reports, Martin claims his failure to do so was not willful because "he believed the probation office was closed for a federal holiday." This contention is unavailing. The record shows Officer Brown told Martin to call the testing line every day, including weekends and holidays. Brown's testimony shows Martin was required to

27

report for such testing on October 10, 2011, but he failed to do so. Although Martin testified to his belief the probation office was closed that day and indicated he was not told the office would be open every day including holidays, we resolve evidentiary conflicts in favor of the court's decision (*People v. Young*, *supra*, 34 Cal.4th at p. 1181) and conclude substantial evidence supports the court's finding that Martin willfully violated term 6f.

### 3. *Failure to keep GPS battery charged*

Martin next contends the evidence was insufficient to support the court's finding that he willfully violated term 11b of his probation by failing to keep his GPS battery charged, as alleged in Brown's rearrest and supplemental reports. This contention is also unavailing.

Martin does not dispute that he failed to keep his GPS battery charged as ordered. The evidence shows he let the battery die on eight occasions between mid-August and late October 2011 but instead of altering his behavior after the first or second occasion, he continued to only partially charge the battery and let it die. We conclude substantial evidence supports the court's finding.

### B. *Constitutionality and Reasonableness of Term Prohibiting Possession of Pornography*

Next, Martin again contends the court erred in finding he violated his probation by possessing pornographic material, because (he maintains) this condition could not be imposed in the first instance as this added probation condition was unconstitutionally vague and not reasonably related to either the underlying drug possession offense or

28

future criminality. We have already addressed Martin's challenge to this condition of his probation.

C. *Termination of Probation and Execution of the Prison Sentence*

Last, Martin contends the court abused its discretion in terminating probation and imposing the prison sentence because any alleged probation violation was de minimis and not willful. We reject this contention. As already discussed, the court properly found that Martin had willfully violated three terms of his reinstated probation by (1) failing to report to the probation office for drug testing, (2) failing to keep his GPS battery charged, and (3) possessing pornographic material. The fact that Martin willfully violated these terms shortly after the court revoked and then reinstated his probation in early August 2011 at the conclusion of the first probation revocation hearing, indicates his violations of probation are not "minor and unintentional," as he asserts. At that hearing, after imposing but staying execution of the prison sentence Martin now challenges, the court admonished Martin that the stay would be lifted "on the first [new] violation." Execution of the prison sentence is fully warranted by Martin's willful, recalcitrant, and repeated refusal to comply with the terms of his probation. For all of the foregoing reasons, we affirm the court's decision to lift the stay of execution of the prison sentence.

DISPOSITION

The judgments are affirmed.


NARES, J.

WE CONCUR:


BENKE, Acting P. J.


HUFFMAN, J.